UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE JAVIER ROMERO,<br><br>                    Petitioner,<br><br>            v.<br><br>MARKWAYNE MULLIN et al.,<br><br>                    Respondents. | Case No. 5:26-cv-02206-MAR<br><br>ORDER ON PETITION FOR<br>HABEAS CORPUS |

**I.**

**INTRODUCTION**

On April 28, 2026, Maurice Javier Romero ("Petitioner"), by and through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241.  ECF Docket Nos. ("Dkt.") 1.  Petitioner argues his detention in Immigration and Customs Enforcement ("ICE") custody without a pre-detention hearing violates his Fifth Amendment due process rights and the Immigration and Nationality Act (INA).  Petitioner seeks release.  Id. at 23.[1] Respondents have filed an Answer in which they state they are not presenting an Opposition argument to the Petition.  Dkt. 6.  For the reasons set forth below, the undersigned **GRANTS** the Petition.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## **BACKGROUND**

Petitioner is from Nicaragua and arrived in the United States in 2022.  Dkt. 1 at 8.  Petitioner was detained after entering the United States and then released by immigration authorities under an Order of Supervision.  Id.  Since that time, he has resided in the United States, "faithfully complying with ICE directives and reporting requirements as directed for over two years," and has "fully abided by the orders and terms" of his release.  Id. at 3.

On December 18, 2025, Petitioner was re-detained when he reported as instructed for a supervision check in.  Id. at 9.  He was detained without any notice, explanation specifying why his Order of Supervision was revoked, or opportunity to be heard.  Id.  Petitioner is in custody at the Adelanto Detention Center ("ADC").  Id. He has not received a bond hearing.  Id. at 10.

On April 28, 2026, Petitioner, through counsel, filed the instant habeas petition alleging that his re-detention without pre-deprivation notice and an opportunity to be heard violates the Fifth Amendment's Due Process Clause and the INA.  Pet. at 16–22.  Petitioner asks the Court to order that he be released and not be re-detained unlawfully.  Id. at 23.

Respondents filed an answer on May 6, 2026.  Dkt. 6, Answer.  Respondents affirmatively state that they are "not presenting an opposition argument" to the Petition.  Id.  Thus, the matter stands submitted.

The Court finds that Petitioner's sudden detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process. Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing.

## III.

## <u>LEGAL STANDARD</u>

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); <u>Magana-Pizano v. I.N.S.</u>, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' "). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. <u>Lambert v. Blodgett</u>, 393 F.3d 943, 970 n.16 (9th Cir. 2004); <u>Bellew v. Gunn</u>, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## IV.

## <u>DISCUSSION</u>

Consistent with recent decisions by this District and others, the Court finds that Petitioner's re-detention—without notice or a meaningful opportunity to be heard—violates procedural due process. Further, in light of Respondents' statement that they "are not presenting an opposition argument at this time," the Court grants the Petition and orders Petitioner's release without any more restrictive conditions as were previously in place, orders Respondents to return all of his personal belongings and identification documents, and order Respondents not to re-detain Petitioner absent pre-deprivation notice and a hearing.

**A. DUE PROCESS**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." <u>Demore v. Kim</u>, 538 U.S. 510, 523 (2003) (citing <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some

3

kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). See also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. Mathews, 423 U.S. at 335.

**B.     ANALYSIS**

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. See Garcia v. Noem, No. 25-CV-3759-LL-BLM, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026); Hurd v. D.C., Gov't, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."). "Even individuals who face significant constraints on their liberty or over whose liberty the

4

government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the ... conditions [of release].' " Garcia, 2026 WL 194745, at *2 (citing Pinchi, 792 F. Supp. 3d at 1032); Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before they can be deprived of that interest. See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

The Court finds that all three factors support a finding that the government's arrest of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. See Garcia, 2026 WL 194745, at *3. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release from custody. See Pinchi, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)); See Cruz, No. 5:25-cv02879, Dkt. 12 at 6; Yataco, 2025 WL 4065463, at *1; C.A.R.V. v. Wofford, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1,

2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); Fernandez Lopez v. Wofford, No. 1:25-cv01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). See also Manzanarez v. Bondi, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).  Freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause."  See Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second Mathews factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of [his] liberty interest absent a pre-detention hearing."  Cruz, No. 5:25-cv-02879, Dkt. 12 at 7.  The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community.  Zadvydas v. Davis, 533 U.S. 678, 699 (2001).  But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

Since the initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed.  See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").  There is no indication that Petitioner has criminal record, and Petitioner "faithfully compl[ied] with ICE directives and reporting requirements as directed for over two years." Pet. at 3.  "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id.  "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence

6

that the noncitizen is in fact dangerous or has become a flight risk ...." Id. Based on the record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention. See Garcia, 2026 WL 194745, at *3 (citing Pinchi, 792 F. Supp. 3d at 1035).

Third, the government's interest in detaining Petitioners without notice, reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that

the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. See, e.g., Sanchez v. LaRose, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful); Garcia, 2026 WL 194745, at *3 (same).

The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting release. See Noori, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); Sanchez, 2025 WL 2770629, at *5 (same); Garcia, 2026 WL 194745, at *3 (same); Ortega, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees under the EAJA. Pet. at 23. The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## V.

## ORDER

**IT IS THEREFORE** ORDERED:

(2) the Petition is **GRANTED**;

(3) Respondents are **ORDERED** to immediately release Petitioner from custody subject only to the conditions of his preexisting parole;

(4) Respondents are **ORDERED** to return all of Petitioner's belongings, including his identification documents;

8

(5) Respondents are **ORDERED** to file a Notice of Compliance with the Court within forty-eight hours of this Order confirming their compliance with this Order; and

(5) Respondents are **ORDERED** not to re-detain Petitioner without notice of the reasons for revocation of his release and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioners poses a danger to the community or a risk of flight. See Martinez Hernandez v. Andrews, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); Pinchi, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

Dated: May 19, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

9